[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM FILED APRIL 29, 1996
Statement of Facts and of the Case
In May of 1995 Carrier applied to the Commission for approval for a two lot subdivision and a waiver of § 6.3 of the Cheshire Subdivision Regulations. Section 6.3 requires that
 "[W]here a subdivision is near a municipal boundary, all proposed lots shall be directly connected with the Cheshie [sic] street system to provide access for school buses, police, fire and emergency vehicles and public works department equipment, within the boundaries of Cheshire." (Record 1.C).
These proposed lots numbered 51 and 52 are located within the Town of Cheshire and comprise the western most portion of the applicant's property. Abutting the eastern boundaries of these lots are the Brockett's Wood subdivision lots 21 and 22, a Wallingford subdivision of approximately 50 lots, developed by the applicant herein. The only public road providing access to the proposed lot is Kazersky Drive located wholly within the Town of Wallingford.
In June of 1995, following a public hearing, the Commission denied the subdivision application and the waiver request. The Commission denied the subdivision application because it found a violation of § 6.3 of the regulation and further denied the CT Page 2895-VVV waiver request because it found that the creation of the lots will "impair the response of emergency vehicles." This appeal was taken in a timely manner. In August of 1995 abutters David Levine and Diane Levine moved to intervene, which motion was granted by this court on September 7, 1995.
On November 14, 1995 the Commission moved to strike the applicant's claim for money damages for an alleged unconstitutional taking and for other equitable relief. On December 21, 1995 this court granted the Commission's Motion to Strike.
Aggrievement
The court finds that the appellant Carrier Enterprises, Inc. is the owner of the affected property and is aggrieved.
Discussion
It is uncontested that § 6.3 of the Cheshire Subdivision Regulations provides as follows:
 Where a subdivision is near a municipal boundary, all proposed lots shall be directly connected with a Cheshire street system to provide access for school buses, police, fire and emergency vehicles and public works department equipment, within the boundaries of Cheshire.
It is further uncontested that the plaintiff's proposed subdivision would not be connected with the Cheshire street system except by passing over streets which were town accepted roads in the Town of Wallingford. If § 6.3 is a proper exercise of power by the Cheshire Planning Commission, then that Commission appropriately denied the application unless it was bound to grant the requested waiver.
It is the court's opinion that the appropriateness of the regulation in question is controlled by the Supreme Court opinion in Nicoli v. Planning and Zoning Commission, 171 Conn. 89 (1976).Nicoli concerned a proposed subdivision located in the Town of Easton but serviced by a road which would be an extension of a road located in the Town of Trumbull. The applicable Easton subdivision regulation provided that roads ". . . must be provided to conform and connect with existing or proposed streets CT Page 2895-WWW or highways within the Town of Easton." Id. at page 94.
The Easton Planning Commission made a finding:
 The lack of access to said subdivision from any street or highway within Town of Easton would prevent any adequate servicing of the area by fire, police, and other emergency vehicles, and by snow plows and school buses, hence the inclusion of the condition in the approval of this application is essential for the protection of the public health, safety and welfare of future residents of this area the Town of Easton.
 Id. at 94.
The court finds that the Planning Commission accepted two reports following the close of the public hearing. Commissions are entitled to receive technical and professional assistance in matters that are beyond their expertise and this assistance may be rendered in an executive session Pizzola v. Planning andZoning Commission, 167 Conn. 202, 208 (1974). I however, the court does not find that the report from the fire chief and fire marshall dated June 19 and received on June 22, nor the report from the police department dated June 8 and received on June 15, each following the close of the public hearing on June 12, were the type of staff reports which are appropriately received following the close of the public hearing.
The court does find that the fire official's report presented the Commission with no new or additional information. The report essentially duplicates an earlier report of the fire marshall and fire chief dated May 8, 1995 and read at the public hearing on June 12, 1995. The court further finds that the acceptance of the police department report is harmless error under all of the facts and circumstances of the case. The difficulties which would be encountered by Cheshire emergency services in responding to emergencies on lots 51 and 52 were thoroughly discussed at the public hearing. Record, page 5 and 6 (Bruno) 10-11 (Orsini) 13-14 (Laska) 14 (Orsini) and 22-23 (Pelletier).
Even in the absence of the improperly received reports, the Commission had more than ample evidence from which it could conclude that there was a violation of § 6.3 and further had more than ample evidence from which it could conclude that the creation of these lots would violate the waiver requirement of CT Page 2895-XXX § 11.1.1 because the proposal "would have a significant adverse effect on adjacent property [and] on the public health and safety . . ."
Nicoli stands for the proposition that the requirement that a subdivision be serviced by a road located in the same town is not inherently unreasonable. While it is possible that the public safety problems in Nicoli may have been more extreme than the public safety problems in the instant case, there is ample evidence before the court to support the Cheshire Planning Commission decision.
Because the proposed two lot subdivision violates § 6.3 and does not satisfy the waiver requirements of § 11.1, the Commission properly denied the application.
The appellant argued that emergency services could have been provided pursuant to §§ 7-277a and 7-310. Under those sections the emergency services could have been provided by the Town of Wallingford. The first answer to this is that there is no indication that such an interlocal agreement existed at the time the Planning Commission acted. Had the Planning Commission acted and made the execution of such an agreement a condition it would very likely have been a condition outside of the Commission's control and therefore an improper and illegal condition.
The applicant also challenges § 6.3 as unconstitutionally vague. An applicant is not permitted to challenge the constitutionality of a regulation when its subdivision application has been made pursuant to it. The Appellate Court has held
 "One who seeks to avail himself of the benefits of a zoning regulation is precluded from raising the question of that regulation's constitutionality. Bierman v. Planning and Zoning Commission, 185 Conn. 135, 139; or of the regulation's validity; Christofaro v. Planning and Zoning Commission, 11 Conn. App. 260, cert. denied, 204 Conn. 810 (1987); in the same proceeding. `One who chooses to engage in subdividing land by that decision chooses also to be subject to the reasonable regulations of the local planning commission.' Wittaker v. Zoning Board of Appeals, 179 Conn. 650, 661 (1980)." Weatherly v. Town Planning and Zoning Commission, 23 Conn. App. 115, 121-22.
CT Page 2895-YYY
Neither may the appellant challenge the general constitutionality of § 6.3 in an administrative appeal. The proper vehicle for such a challenge is a declaratory judgment action with proper notice to all interested and affected parties.Bombero v. Planning and Zoning Commission, 281 Conn. 737, 745
(1991). Finally, the court finds nothing vague in the requirement of § 6.3 that a Cheshire subdivision must have access to the Cheshire road system.
The court recognizes that each side briefed the issue of a taking claim by reason of the application of § 6.3. Mindful of the fact that the court has stricken the count seeking money damages for taking, it appears to this court that no purpose is served in examining the taking issue.
BOOTH, J.